JAMES F. CLAPP (145814)
jclapp@sdlaw.com
JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART CLAPP HANNINK & COVENEY, LLP
4370 La Jolla Village Drive, Suite 970
San Diego, California 92122-1253
Tel: 858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SASAN MIRKARIMI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>NEVADA PROPERTY 1, LLC, a Delaware limited liability company DBA THE COSMOPOLITAN HOTEL OF LAS VEGAS, and DOES 1-50, inclusive,<br><br>        Defendant. | CASE NO. 12-CV-2160 BTM (DHB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   June 19, 2015<br>Time:  11:00 a.m.<br>Ctrm:  15B<br>Judge: Hon. Barry Ted Moskowitz |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................. 2

III.    SETTLEMENT TERMS ...................................................................... 4

IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............. 9

        A.    The Standard for Preliminary Approval ................................. 9

        B.    Strength of Plaintiff's Claim and Risk of Further Litigation ............... 11

        C.    Amount of the Proposed Settlement ...................................... 12

        D.    Extent of Discovery Completed and Stage of the Proceedings ........... 15

        E.    Experience and Views of Counsel ........................................ 15

        F.    Reaction of the Class to the Settlement ................................. 15

V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............. 15

        A.    The Settlement Class Meets the Requirements of Rule 23(a) .............. 16

              1.    Numerosity ................................................................ 16

              2.    Commonality .............................................................. 16

              3.    Typicality ................................................................... 17

              4.    Adequacy ................................................................... 17

        B.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ......... 17

VI.    THE PROPOSED CLASS NOTICE IS PROPER ................................... 18

VII.   CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ades v. Omni Hotels Management Corp.*,
  2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014) .................................... 11

*Amchem Products v. Windsor*,
  521 U.S. 591 (1997) ...................................................... 17

*Churchill Village, LLC v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ...................................................... 19

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ...................................................... 9

*Gautreaux v. Pierce*,
  690 F.2d (7th Cir. 1982) ...................................................... 9

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ...................................................... 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................... 11, 16, 17, 18

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ...................................................... 17

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) ...................................................... 10

*McDonald v. Bass Pro Outdoor World, LLC*,
  2014 U.S. Dist. LEXIS 109080 (S.D. Cal. Aug. 5, 2014) ............................ 13, 16

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
  618 F.3d 988 (9th Cir. 2010) ...................................................... 8

*Officers for Justice v. Civil Service Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...................................................... 9, 10

*Overton v. Hat World, Inc.*,
  2012 U.S. Dist. LEXIS 144116 (E.D. Cal. Oct. 4, 2012) ................................ 19

ii

MEMO. OF P.&A. IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR                 12-CV-2160 BTM (DHB)
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Quesada v. Bank of America Investment Svcs.*,
    2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013)...................................11

*Reed v. 1-800 Contacts, Inc.*,
    2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) ..........................................13

*Reed v. 1-800 Contacts, Inc.*,
    No. 12-cv-2359 JM (BGS) (S.D. Cal. Aug. 29, 2013), Dkt. 45 at 3 ...................15

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ...............................................................................16

*Torres v. Nutrisystem, Inc.*,
    2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013)......................................11

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................11

*In re Traffic Executive Association-Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980) ..................................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2nd Cir. 2005) ...............................................................................10

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ............................................................................16

**California Cases**

*Greenberg v. E-Trade Financial Corp.*,
    L.A. Sup. Ct. No. BC360152...........................................................................11, 14

*Hataishi v. First American Home Buyers Protection Corp.*,
    223 Cal. App. 4th 1454 (2014) ...........................................................................11

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) .........................................................................................18

*Kight v. CashCall, Inc.*,
    231 Cal. App. 4th 112 (2014) .............................................................................11

**Federal Statutes**

28 U.S.C.
    § 1961 ....................................................................................................................5

**California Statutes**

Privacy Act, Cal. Penal Code
§§ 632 *et seq.* ............................................................*passim*

**Other Authorities**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice & Procedure* § 1778 (2d ed. 1986) ..........................17

Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)...................9

Fed. R. Civ. P. 23 *et seq.* ..........................................16, 17, 18

Fed. R. Civ. P. 37................................................................3

Fed. R. Civ. P. 45................................................................3

*Manual for Complex Litigation, Fourth* (2004) ..............................9

# I. INTRODUCTION

In this putative class action, plaintiff Sasan Mirkarimi ("plaintiff") alleges that defendant Nevada Property 1 LLC, d/b/a The Cosmopolitan of Las Vegas ("The Cosmopolitan" or defendant"), recorded telephone calls made to or received from California residents without their consent, in violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 632 and 632.7 (the "Privacy Act"). After nearly three years of litigation, the parties have reached a settlement which, upon final court approval, will resolve the claims of plaintiff and all putative class members. Plaintiff requests that the Court preliminarily approve the parties' Settlement Agreement ("Agreement" or "Settlement"), which is submitted as Exhibit 1 to the Declaration of James T. Hannink filed herewith.

The Settlement is the result of hard-fought litigation over many contested legal and factual issues. The litigation involved a motion to transfer, a motion to dismiss, a motion to strike class allegations, extensive written and deposition discovery, voluminous document production, third-party discovery, numerous discovery conferences between counsel and with the Court, and several contested discovery motions. The proposed settlement was reached following a full-day mediation session on February 20, 2015.

The Settlement provides that The Cosmopolitan will pay monetary consideration of Fourteen Million Five Hundred Thousand Dollars ($14,500,000). After Court-approved deductions, all funds will be distributed to Participating Class Members who submit timely and valid claims. The monetary amount is non-reversionary. Any undistributed funds (due to settlement checks that are uncashed 120 days after mailing) will be distributed to a Court-approved *cy pres* recipient.

Plaintiff's counsel believe the Settlement is in the best interests of the putative class and should be approved. Plaintiff requests that the Court enter an order: (1) preliminarily approving the proposed Settlement; (2) conditionally certifying the class described herein for settlement purposes; (3) appointing, for settlement

purposes only, the law firm of Dostart Clapp Hannink & Coveney, LLP as Class Counsel; (4) appointing, for settlement purposes only, Sasan Mirkarimi as the Class Representative; (5) appointing CPT Group, Inc. as the Claims Administrator; (6) approving the proposed Class Notice, Publication Notice, Claim Forms, and the agreed-upon plan for mailing and publication; and (7) setting a final approval hearing for approximately 120 days after the Court enters preliminary approval.

## II.    FACTUAL BACKGROUND

Plaintiff Sasan Mirkarimi is an individual who resides in San Diego County, California. Defendant is a Delaware limited liability company that operates a luxury hotel and casino in Las Vegas, Nevada.

Plaintiff commenced this lawsuit on July 12, 2012 by filing a complaint in the San Diego County Superior Court. Dkt. 1-1. On August 31, 2012, The Cosmopolitan removed the action to this Court. Dkt. 1.

This case was vigorously contested from the outset. On September 7, 2012, The Cosmopolitan responded to the Complaint with a Motion to Transfer Venue (Dkt. 6) and a Motion to Dismiss or, In the Alternative, to Strike the Class Allegations (Dkt. 7). Plaintiff filed a First Amended Complaint on September 25, 2012. Dkt. 8. On October 9, 2012, The Cosmopolitan re-filed its Motion to Dismiss or, In the Alternative, to Dismiss Class Allegations. Dkt. 15. After the Motion to Transfer Venue was fully briefed and taken under submission, the motion was withdrawn. Dkt. 38. On July 15, 2013, the Court entered an order denying the Motion to Dismiss and denying the Motion to Strike Class Allegations. Dkt. 40. The Cosmopolitan filed its Answer on August 2, 2013. Dkt. 41.

On October 24, 2013, the parties participated in an Early Neutral Evaluation Conference before Magistrate Judge David H. Bartick. The case did not settle, so the parties thereafter conducted a Rule 26(f) conference and commenced formal discovery in November 2013. Hannink Decl. ¶ 9.

During the ensuing fifteen months, the parties engaged in extensive discovery. Plaintiff's written discovery included propounding seven sets of requests for production (totaling 185 document requests); five sets of interrogatories (totaling 36 interrogatories); and two sets of requests for admissions (totaling 19 requests). The written discovery gave rise to a number of disputes on which the parties met and conferred in accordance with Fed. R. Civ. P. 37 and Magistrate Judge Bartick's Chamber's Rules. During the meet and confer efforts, The Cosmopolitan agreed to supplement many of its written responses and to produce many of the requested documents. Altogether, The Cosmopolitan served a total of 28 sets of initial and supplemental responses to interrogatories, requests for production, and requests for admission, and produced Excel spreadsheets and other documents amounting to tens of thousands of pages. Hannink Decl. ¶ 10.

The parties' extensive meet and confer efforts resolved many discovery issues. However, the parties reached an impasse on several issues that were briefed for the Court. On October 22, 2014, Magistrate Judge Bartick entered an Order Regarding Joint Motion for Determination of Discovery Dispute, which granted in part plaintiff's request to compel further responses to interrogatories and production of documents. Dkt. 76. On November 21, 2014, Magistrate Judge Bartick entered another Order Resolving Joint Motion for Determination of Discovery Dispute, which granted plaintiff's request to lift a stay on communications with putative class members. Dkt. 91. Plaintiff took nine depositions, and obtained discovery from third parties pursuant to Rule 45 subpoenas. Hannink Decl. ¶ 9.

Among other information, plaintiff sought production of call system metadata reflecting the recorded calls at issue, including the date, time, and duration of each call, and the telephone numbers involved. It was eventually determined that the system metadata is available for months beginning with June 2012, but not for earlier months. Dkt. 84-4, ¶ 13.

After extensive discovery, and as the class certification deadlines drew near, the parties agreed to participate in mediation. The mediation took place on February 20, 2015 in San Francisco, California, before mediator David A. Rotman, and resulted in an agreed term sheet. Thereafter, the parties finalized settlement documents and the Settlement Agreement was signed on May 8, 2015. At all times, the settlement negotiations, while cordial, were adversarial, non-collusive, and were conducted at arm's-length. Hannink Decl. ¶ 14.

Defendant expressly denies any liability or wrongdoing of any kind associated with the claims alleged in the action, and further contends that, for any purposes other than settlement, this action is not appropriate for class treatment. By entering into the Settlement Agreement, Defendant did not admit or concede any actual or potential fault, wrongdoing, or liability against it in the action or in any other actions.

## III. SETTLEMENT TERMS

Material terms of the Settlement include the following:

1. <u>Settlement Class Definition</u>. The parties request that the Court certify a settlement class for settlement purposes only as follows: "All natural persons who, while physically present in the State of California, either: (a) placed a telephone call to The Cosmopolitan between July 12, 2011 and August 3, 2012 that was recorded by The Cosmopolitan; or (b) received a telephone call from The Cosmopolitan between July 12, 2011 and February 20, 2015 that was recorded by The Cosmopolitan. Excluded from the Class are all employees of The Cosmopolitan, all attorneys and employees of plaintiff's counsel, as well as the judicial officers to whom the Lawsuit is assigned and their court staff." Agreement, Section III.A. (Hannink Decl. Ex. 1 at 4).

2. <u>Appointment of Class Representative and Class Counsel</u>. For settlement purposes only, the parties request that Sasan Mirkarimi be appointed as Class Representative; that Dostart Clapp Hannink & Coveney, LLP, be appointed as

4

1   Class Counsel; and that CPT Group, Inc. be appointed as Claims Administrator.

2   Section III.C.-E. (Ex. 1 at 4-5).

3        3.    Monetary Consideration.    The monetary consideration to be paid by

4   The Cosmopolitan (the "Settlement Amount") is the principal amount of Fourteen

5   Million Five Hundred Thousand Dollars ($14,500,000), plus interest accruing at the

6   then-applicable rate pursuant to 28 U.S.C. § 1961 beginning on the Judgment Entry

7   Date and continuing through the date The Cosmopolitan pays the Settlement

8   Amount to the Claims Administrator.  Of that amount, The Cosmopolitan will pay

9   Three Hundred Thousand Dollars ($300,000) to the Claims Administrator by wire

10  transfer no later than fifteen (15) days following the Preliminary Approval Date.

11  The remainder of the Settlement Amount will be paid to the Claims Administrator

12  by wire transfer by the later of: (a) ten (10) days after the Effective Date, or (b) if a

13  Class Member files a timely objection to the Settlement, then thirty (30) days after

14  the Effective Date.  Section IV.A. (Ex. 1 at 5).

15       4.    Change in Business Practices.    In addition to the monetary

16  consideration, for a period of at least three years following entry of judgment, The

17  Cosmopolitan will not record a telephone call with a person who is using a

18  California telephone number without first informing the person at the outset of the

19  call that the call may be recorded.  Section IV.C. (Ex. 1 at 6).

20       5.    Information to the Claims Administrator.  Within fifteen (15) days after

21  the Preliminary Approval Date, The Cosmopolitan will provide the Claims

22  Administrator and Class Counsel with a "Customer Spreadsheet," which will list the

23  name, address, and telephone number of each California Customer whose

24  information was entered into The Cosmopolitan's reservation database or its Identity

25  Membership & Awards database between July 12, 2011 and August 3, 2012.

26  Section VII.D.1. (Ex. 1 at 7).  Further, the parties are in the process of preparing a

27  "Call Spreadsheet," which will list (to the extent of available records) the date and

28  telephone number for each call that The Cosmopolitan received from, or placed to, a

5

California telephone number during the relevant period. Section VII.D.2. (Ex. 1 at 8). The Claims Administrator will also be provided with a "Telephone Number Spreadsheet," which lists the telephone numbers used by The Cosmopolitan during the relevant period for calls with California customers on lines that were capable of being recorded. Section VII.D.3. (Ex. 1 at 8). The foregoing information will be used by the Claims Administrator to disseminate Class Notice and to validate Claim Forms, as further described below.

6. <u>Mailed Notice</u>. No later than thirty (30) days following the Preliminary Approval Date (the "Notice Date"), the Claims Administrator will mail to the last-known home address of each person who appears in the Customer Spreadsheet the Court-approved Class Notice (Exhibit B to the Agreement, see Ex. 1 at 30-34), as well as a Green Claim Form (Exhibit C to the Agreement, Ex. 1 at 36), which will be printed on green paper and will contain the person's name and a bar code or control number for tracking purposes. Section VII.F. (Ex. 1 at 8-9). Prior to the mailing, the Claims Administrator will run the last-known home address information in the Customer Spreadsheet through the U.S. Postal Service's National Change of Address ("NCOA") database and update the Customer Spreadsheet as necessary. *Ibid*. For a period of forty-five (45) days following the Notice Date, if any settlement documents are returned to the Claims Administrator as undeliverable, the Claims Administrator will perform a skip-trace and/or other customary address search in an attempt to locate a valid address, and if a new address is obtained, re-mail the settlement documents to that address. *Ibid*. The proposed form of mailed notice describes the terms of the Settlement, advises recipients that in order to potentially qualify for a settlement payment, the individual must submit a Claim Form, and advises that complete details regarding the Settlement can be obtained by accessing the settlement website or contacting Class Counsel.

7. <u>Publication Notice</u>. In addition to mailed notice, the Claims Administrator will publish notice on three separate occasions in each of the *Los*

6

*Angeles Times*, the *San Francisco Chronicle*, the *San Diego Union-Tribune*, the *Sacramento Bee*, and the *Fresno Bee*. Section VII.G. (Ex. 1 at 9); Exhibit D to the Agreement (Ex. 1 at 38). The publication notice will advise readers that a proposed class action settlement has been reached, state the deadline for filing claims, opting out, or objecting to the Settlement, and state that more information about the Settlement is available on the settlement website or from Class Counsel.

8. <u>Settlement Website</u>. In addition to mailed and published notice, the Claims Administrator will establish a settlement website on which will be made available the Class Notice, the Claim Form, the Agreement, the complaint, the order granting preliminary approval of the Settlement, and any other materials agreed to by the Parties. Section VII.H. (Ex. 1 at 9).

9. <u>Claim Forms</u>. After the notice mailing date, Class Members will have 60 days to submit a Claim Form, to request exclusion from the class, or to file and serve a written objection to the Settlement. Sections VII.J - VII.L. (Ex. 1 at 10-13).

10. <u>Claim Validation</u>. The Claims Administrator will validate Claim Forms by comparing the name and/or telephone number information on the Claim Form against the information in The Cosmopolitan's records. Section VII.J. (Ex. 1 at 10). A claimant who completes and timely returns a Green Claim Form (indicating that The Cosmopolitan's records identify the individual as a California customer) will qualify as a Participating Class Member without further analysis. Section VII.J.1. (Ex. 1 at 10). An individual who completes and timely returns a Blank Claim Form will qualify as a Participating Class Member if either (a) his or her telephone number (as reported by the individual on the Claim Form) appears in the Call Spreadsheet or (b) the individual submits telephone bills or other evidence indicating that the claimant participated in a call with The Cosmopolitan on one of the recorded lines during the relevant period. Section VII.J.2. (Ex. 1 at 10-11). Claim Forms are to be signed under penalty of perjury and attest that the claimant participated in a call with The Cosmopolitan during the relevant period while

7

physically present in California.

11.  Fee Motion.  In advance of the deadline for filing objections, pursuant to *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), Class Counsel will file a motion for an award of attorneys' fees of up to thirty percent (30%) of the Settlement Amount, plus actual litigation expenses not to exceed $150,000.  Section V. (Ex. 1 at 6).  That motion will also request a service payment to plaintiff not to exceed $30,000.  Section VI. (Ex. 1 at 6-7). These amounts are all subject to Court approval.

12.  Distribution of Settlement Amount.  Following final court approval and occurrence of the Effective Date, each Participating Class Member will be entitled to receive a pro-rata portion of the Net Settlement Amount (the amount available for distribution after payment of settlement costs including attorneys' fees, litigation expenses, a class representative enhancement award, and expenses of administration).  Section VIII.A. (Ex. 1 at 13).  Any check that is not cashed within one hundred and twenty (120) days of its mailing by the Claims Administrator will be void, and any portion of the Settlement Amount that remains unpaid at the end of 120 days will be paid to a cy pres recipient proposed by the parties and approved by the Court, unless the Court orders otherwise.  Section VIII.B.  (Ex. 1 at 13-14).

13.  Releases.  Plaintiff will provide The Cosmopolitan with a general release of his individual claims.  Section IX.A. (Ex. 1 at 14).  The Cosmopolitan will provide plaintiff with a limited release.  Section IX.B. (Ex. 1 at 14-15).  Class Members will provide a limited release as follows:  "Provided that the Effective Date occurs, Class Members (other than the Excluded Class Members) will release and discharge The Cosmopolitan, and each of The Cosmopolitan's past and present officers, directors, employees, shareholders, members, partners, agents, representatives, predecessors, successors, parents, subsidiaries, affiliates, assigns, insurance companies, and attorneys, from any and all claims during the Applicable Class Period arising from the facts alleged in the Lawsuit, or which could have been

8

alleged based on the facts pled in the Lawsuit, including all claims for violation of Penal Code sections 632, 632.7, and 637.2." Section IX.C. (Ex. 1 at 15).

## IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Standard for Preliminary Approval

Court approval of a class action settlement involves a two-step process. The parties first submit the proposed terms of the settlement to the court for a preliminary fairness evaluation. If the preliminary evaluation of the settlement does not disclose a basis to doubt its fairness or other obvious deficiencies, the court then directs that notice be given to the class and sets a final fairness hearing. *Manual for Complex Litigation, Fourth*, § 21.632 (2004).

Preliminary approval should be granted if the proposed settlement falls "within the range of possible final approval." *Gautreaux v. Pierce,* 690 F.2d at 616, 621 n.3 (7th Cir. 1982); Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002), § 11.25 at pp. 38-39. Stated another way, preliminary approval is "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

The policy of the federal courts is to encourage settlement before trial. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. … The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Ibid*. The Ninth Circuit has recognized that "the very essence of a settlement is compromise." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*. at 625.

The "universal standard" in evaluating the fairness of a settlement is whether the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Ibid*. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998), citing *Officers for Justice*, 688 F.2d at 625. Thus, even if the amount of a proposed monetary settlement is a fraction of the potential recovery, that does not render the settlement inadequate. *Linney*, 151 F.3d at 1242.

A proposed settlement is presumptively fair when (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). All of those factors are present in the instant case. The proposed settlement is the product of arm's-length, non-collusive negotiations, overseen by a respected independent mediator (Hannink Decl. ¶ 14); the class is represented by experienced counsel (*id.*, ¶ 7); and the parties exchanged a significant amount of information through discovery so that plaintiff and his counsel are able to make an informed recommendation about the settlement (*id.*, ¶ 15). Thus, the Settlement is presumed to be fair.

In evaluating the fairness of a settlement, the district court can weigh a variety of factors, including the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of

10

counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The relative degree of importance to be attached to any particular factor depends upon the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Plaintiff submits that the pertinent factors warrant preliminary approval of the instant Settlement.

### B.  Strength of Plaintiff's Claim and Risk of Further Litigation

The Cosmopolitan has raised numerous defenses to the class claims. For example, The Cosmopolitan has contended that telephone calls involving its contact center could not give rise to an objectively reasonable expectation that the calls would not be recorded, in which case the calls would not qualify as "confidential communications" within the meaning of Penal Code § 632(c). Aside from asserting that plaintiff and the putative class could not establish the elements of the substantive claims, The Cosmopolitan also contends that even if plaintiff were to prevail, an award of aggregated statutory damages would violate the Excessive Fines and Due Process provisions of the United States and California Constitutions.

Regarding class certification, The Cosmopolitan has argued that individual issues would predominate over common issues, and that a class action would not be superior. In the call-recording context, two federal district courts have denied motions for class certification, and two panels of the California Court of Appeal have affirmed trial court orders denying class certification. *See Quesada v. Bank of America Investment Svcs.*, 2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013); *Torres v. Nutrisystem, Inc.*, 2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013); *Hataishi v. First American Home Buyers Protection Corp.*, 223 Cal. App. 4th 1454 (2014); *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014). On the other hand, at least one California Superior Court and one federal district court have granted motions for class certification. *See Greenberg v. E-Trade Financial Corp.*, L.A. Sup. Ct. No. BC360152 (Feb. 7, 2008) (Hannink Decl. Ex. 2); *Ades v. Omni Hotels*

*Management Corp.*, 2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014). Plaintiff believes the cases in which class certification was denied are factually distinguishable from this case. However, there is no doubt that a motion for class certification would be contested and there could be no certainty about the outcome.

Apart from risks associated with class certification and trial, if the litigation were to continue, the trial process itself and subsequent appeals would take years, with very substantial expenditures of time and resources by the parties and the Court, and without any guarantee of recovery for class members. The proposed settlement eliminates all litigation risks and ensures that the class members receive some compensation for their claims on a timely basis.

**C.    Amount of the Proposed Settlement**

The Settlement will result in a substantial payment to Participating Class Members. Although the number of potential class members cannot be determined with precision, it is possible to estimate that number based on the call system metadata for June and July 2012. With respect to inbound calls, the metadata reflects that during those two months combined The Cosmopolitan received approximately 60,000 calls on recorded lines from about 26,000 unique California telephone numbers. Hannink Decl. ¶ 13. Extrapolating those numbers to a year-long period would lead to a figure of about 360,000 total inbound calls, from perhaps as many as 156,000 unique telephone numbers. However, it is likely that some individuals made calls in several different months throughout the year, and it is also likely that some individuals made calls using two different telephones. Those instances would be expected to somewhat reduce the number of new unique callers with each passing month.

With respect to outbound calls, the metadata reflects that during June and July 2012 (combined), The Cosmopolitan made 270 recorded calls to 224 unique California telephone numbers. Hannink Decl. ¶ 13. Extrapolating those figures to the period for outbound calls would lead to a figure of about 5,670 outbound calls to

4,704 unique California telephone numbers.  Again, this does not account for the likelihood that some individuals would be called in multiple months or that some individuals who received outbound calls also made inbound calls.

Based on the available information, Class Counsel believes that 150,000 is a reasonable estimate of the number of potential class members.  Using that estimate, the instant Settlement would equate to approximately $96.67 for each potential class member on a gross basis.  To the extent the claims rate is less than 100%, the amount allocable to each Participating Class Member will be higher.  This compares favorably to settlements in other Privacy Act cases.  A few settlements have resulted in somewhat higher per-person figures, but most are significantly lower.

- In *McDonald v. Bass Pro Outdoor World, LLC*, 2014 U.S. Dist. LEXIS 109080 (S.D. Cal. Aug. 5, 2014), District Judge Cynthia A. Bashant preliminarily approved a $6,000,000 settlement for a class that included approximately 30,400 identifiable individuals (average of approximately $197 per identifiable class member).  *Id.* at *19-20.  Judge Bashant later granted final approval.  *See id.*, Case No. 13-cv-889-BAS (DHB) (S.D. Cal. Dec. 18, 2014), Dkt. 55.

- In *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014), District Judge Jeffrey T. Miller granted final approval of an $11,700,000 settlement for a class that included approximately 100,000 identifiable potential class members (average of approximately $117 per identifiable class member before court-approved deductions).  *Id.* at *3-5.

- In *Skuro v. BMW of North America, LLC*, Case No. 10-8672 GW (FFMx) (C.D. Cal.), the settlement involved 40,000 class members and gave them the option of selecting a six-month extension of the BMW Assist basic safety plan (valued by the parties at $100) or making a claim for *up to* $50 against a $300,000 settlement fund.  *See* Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement, *Skuro v. BMW, supra*, at 2, 6 (Hannink Decl. Ex. 3 at 55, 59).  Depending on how many class members opted for a monetary

13

recovery, the actual payment amount was somewhere between the stated maximum of $50 and a minimum of $7.50.

● In *Marenco v. Visa Inc.*, Case No. 10-8022 DMG (VBKx) (C.D. Cal.), the court approved an $18,000,000 settlement for a class that numbered approximately 600,000 individuals. *See* Memo. of P.&A. in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, *Marenco v. Visa, supra*, at 3 (Hannink Decl. Ex. 4 at 87). Thus, the average monetary recovery was approximately $30.00 per class member.

● In *Zaw v. Nelnet Business Solutions, Inc.*, Case No. 3:13-cv-05788-RS (N.D. Cal.), the gross settlement amount was $1,188,110 and there were approximately 104,100 potential class members. *See* Memo. of P.&A. in Support of Joint Motion for Preliminary Approval of Class Action Settlement, *Zaw v. Nelnet, supra*, at 13 (Hannink Decl. Ex. 5 at 128). Thus, the settlement was approximately $11.41 per class member.

● In *Batmanghelich v. Sirius XM Radio, Inc.*, Case No. 09-9190 VBF (JCx) (C.D. Cal.), the case settled for $9,480,000 on behalf of a class estimated to include more than 1,000,000 class members. *See* Renewed Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement, *Batmanghelich v. Sirius, supra*, at 5, 9 (Hannink Decl. Ex. 6 at 152, 156). Thus, the average monetary recovery was approximately $9.48 per class member.

● In *Greenberg v. E-Trade Financial Corporation*, L.A. Sup. Ct. No. BC360152 (May 11, 2009), the case settled for $7.5 million. The class potentially could have included as many as 1,000,000 customers. *See* Notice of Motion and Motion for Preliminary Approval of Class Action Settlement *etc*. and Memo. of P.&A. in Support Thereof, *Greenberg v. E-Trade, supra*, at 1, 10 (Hannink Decl.

Ex. 7 at 178, 187). Thus, the monetary recovery per class member could have been as low as $7.50.[1]

Thus, viewed in the context of other Privacy Act settlements, the monetary recovery in this case is large in both absolute and relative terms, and represents a very significant recovery on behalf of class members.

### D. Extent of Discovery Completed and Stage of the Proceedings

As summarized above in Section II.B, discovery in this action was extensive and hard-fought. Based on that discovery, plaintiff and his counsel are sufficiently familiar with the facts of this case and the applicable law to make an informed judgment as to the fairness of the Settlement. Hannink Decl. ¶ 15.

### E. Experience and Views of Counsel

Class Counsel, the law firm of Dostart Clapp Hannink & Coveney, LLP, has been appointed as lead or co-lead class counsel in more than 50 certified class actions. Class Counsel believes the Settlement is fair, reasonable, and in the best interests of the class members. Hannink Decl. ¶¶ 6, 15.

### F. Reaction of the Class to the Settlement

Class members will have an opportunity to object or opt-out of the settlement. Class Counsel will report on the reaction of the class members at the final approval hearing.

## V. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

At the preliminary approval step, a district court must also determine that a class should be certified for settlement purposes. In many similar cases alleging violation of the Privacy Act, district courts have held that it is proper to certify such classes for settlement purposes. *See, e.g.*, *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-

---

[1] The *Marenco, Batmanghelich, and Greenberg* settlements included class members located in multiple states. In those cases, California class members received more than class members in the other states.

2359 JM (BGS) (S.D. Cal. Aug. 29, 2013), Dkt. 45 at 3; *McDonald*, 2014 U.S. Dist. LEXIS 109080, at *7-16.

### A. The Settlement Class Meets the Requirements of Rule 23(a)[2]

A class is appropriate for certification if: "(1) the class is too numerous, making joinder of the parties impracticable; (2) common questions of law or fact exist among the class members; (3) the claims of the class representatives are typical of the claims of the class; and (4) the class representatives will adequately represent the interest of the class." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998). Each of those requirements is met in the instant case.

#### 1. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." In *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), the court observed that if a class exceeds 40 members, the numerosity requirement is satisfied. Here, the class includes thousands of individuals. Hannink Decl. ¶ 13.

#### 2. Commonality

The commonality requirement serves two purposes: (1) ensuring that absentee members are fairly and adequately represented and (2) ensuring practical and efficient case management. *Walters*, 145 F.3d at 1045, citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). The standard under Rule 23(a)(2) is "permissive." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, all class members were allegedly the subject of undisclosed recording by The Cosmopolitan. Thus, the class members' claims are legally and factually similar on at least some issues.

---

[2] As set forth in the Settlement Agreement, Defendant denies any and all allegations of liability or wrongdoing asserted in the action and denies that any of the claims alleged in the action are suitable for class certification other than for purposes of settlement.

### 3. Typicality

A class representative's claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest*, 457 U.S. at 157 n.13. Here, Plaintiff's claim is typical. Plaintiff's claim is that all class members' telephone conversations with The Cosmopolitan were recorded without consent.

### 4. Adequacy

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy requirement is met here. Plaintiff has no interests that are antagonistic to those of the other class members and has retained counsel experienced in class action litigation. Hannink Decl. ¶¶ 7, 16.

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

The predominance inquiry tests whether proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

Plaintiff contends the predominant factual and legal issues include whether The Cosmopolitan recorded telephone conversations without providing a notice at the outset of the call, and, for the claim based on Penal Code § 632, whether such calls could give rise to an objectively reasonable expectation that the calls would not be recorded. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) (holding that "[a] business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision."). Here, The Cosmopolitan had standardized procedures with respect to recording telephone calls, and did not institute procedures to notify callers that calls are recorded until after the lawsuit was filed. Hannink Decl. ¶ 11. Thus, it is appropriate to resolve these claims via settlement on a classwide basis.

The superiority prong under Rule 23(b)(3) involves a comparison of the potential alternative mechanisms for resolving the dispute. *Hanlon*, 150 F.3d at 1023. Here, the only alternative to a class action would be thousands of individual actions. That would be neither practical nor efficient. Individual litigation would consume scarce judicial resources, impose substantial additional burdens and expense on the litigants, and present a risk of inconsistent rulings. Accordingly, resolution through a class settlement is superior.

## VI. THE PROPOSED CLASS NOTICE IS PROPER

Pursuant to Fed. R. Civ. P. 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Notice is satisfactory if it "generally

describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, the proposed class notice (Exhibit B to the Agreement) describes the litigation, the terms of the Settlement, and the class members' options. The Claims Administrator will mail the notice via first-class mail, postage prepaid, to the last-known addresses of identifiable California Customers, as updated through the U.S. Postal Service's NCOA database. Section VII.F. and Ex. 1 at 8-9. This method satisfies due process. *Overton v. Hat World, Inc.*, 2012 U.S. Dist. LEXIS 144116, at *5 (E.D. Cal. Oct. 4, 2012).

In addition, to ensure that notice reaches as many potential class members as possible, the Settlement also provides for Publication Notice. Section VII.G. and Ex. 1 at 9. The Publication Notice will be published three times in each of the *Los Angeles Times*, the *San Francisco Chronicle*, the *San Diego Union-Tribune*, the *Sacramento Bee* and the *Fresno Bee*. The Publication Notice describes the nature of the case, states the deadline for filing claims, opting out, or objecting to the Settlement, and advises readers that they can obtain more information from the settlement website or by contacting Class Counsel. If anyone who does not appear in the Customer Spreadsheet contacts the Claims Administrator to request a claim form, the Claims Administrator will provide that person with a Claim Form for the person to fill in and return. Section VII.G. (Ex. 1 at 9). Accordingly, the proposed class notice and the plan for circulation comply with Rule 23 and due process.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## VII.  CONCLUSION

Based on the foregoing, plaintiff respectfully requests that the Court enter an order preliminarily approving the Settlement and set a final approval hearing for approximately 120 days thereafter.

Dated: May 8, 2015

DOSTART CLAPP HANNINK &
COVENEY, LLP


/s/ James T. Hannink
JAMES T. HANNINK
Attorneys for Plaintiff

706744.6