UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SASAN MIRKARIMI, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>NEVADA PROPERTY 1, LLC, a Delaware limited liability company DBA THE COSMOPOLITAN HOTEL OF LAS VEGAS, and DOES 1-50, inclusive,<br><br>            Defendant. | CASE NO. 12-CV-2160 BTM (DHB)<br><br>**ORDER GRANTING WITH MODIFICATION PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVIDING FOR NOTICE** |

Presently pending are Plaintiff, Sasan Mirkarimi's ("Plaintiff"), motion for preliminary approval of class action settlement (Doc. 104) and joint request for approval of *cy pres* recipients and revised class notice (Doc. 110). These motions relate to the settlement between Plaintiff and Defendant, Nevada Property 1 LLC, a Delaware limited liability company, d/b/a The Cosmopolitan of Las Vegas ("Defendant" or "The Cosmopolitan"). The settlement arises out of Plaintiff's July 12, 2012 Complaint alleging that The Cosmopolitan violated the California Invasion of Privacy Act, Cal. Pen. Code §§ 632 and 632.7, by recording telephone calls made between Defendant and California residents,

without their consent, during the period between July 12, 2011 and February 20, 2015.

Plaintiff requests the Court to enter an Order: (1) preliminarily approving the Settlement Agreement dated May 8, 2015 (Doc. 104-3, Exh. 1); (2) conditionally certifying the proposed Class under Fed. R. Civ. P. 23(b)(3), for settlement purposes only; (3) appointing Dostart Clapp Hannink & Coveney, LLP as Class Counsel, for settlement purposes only; (4) appointing Sasan Mirkarimi as the Class Representative, for settlement purposes only; (5) appointing CPT Group, Inc. as the Claims Administrator; and (6) approving the revised proposed Notice of Class Action Settlement and *cy pres* recipients (Doc. 110, Exhibit 1), Publication Notice, Green Claim Form, Blank Claim Form (Doc. 104-3, Exhibits C–E to the Settlement Agreement, collectively "the Notice Forms"), and agreed-on plan for mailing, publication, and distribution. This Order incorporates by reference the definitions in the Settlement Agreement.

Having heard the parties' argument and reviewed and considered the Settlement Agreement and exhibits thereto, as well as the parties' joint supplemental briefing, the Court GRANTS with modification, the motion for preliminary approval of class action settlement and joint request for approval of *cy pres* recipients and revised class notice (Docs. 104, 110).

## I.   DISCUSSION

Once parties reach a settlement agreement prior to class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). The court must: (1) assess whether a class exists, and (2) determine whether the proposed settlement is "fundamentally

fair, adequate, and reasonable." Id.

### a. The Class

A plaintiff seeking a class certification must satisfy the prerequisites of Rules 23(a) and 23(b)(3). Here, the parties seek provisional certification of the following class ("Class") for settlement purposes only:

> "All natural persons who, while physically present in the State of California, either: (a) placed a telephone call to The Cosmopolitan between July 12, 2011 and August 3, 2012 that was recorded by The Cosmopolitan; or (b) received a telephone call from The Cosmopolitan between July 12, 2011 and February 20, 2015 that was recorded by The Cosmopolitan. Excluded from the Class are all employees of Cosmopolitan, all attorneys and employees of plaintiff's counsel, as well as the judicial officers to whom the Lawsuit is assigned and their court staff.

(Doc. 104-3, Exh. 1, §III.A).

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See also Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003). First, the proposed Class, numbering approximately 150,000, is so numerous that joinder is impracticable (Doc. 104-2, ¶13). Second, each of the proposed Class members was allegedly subjected to undisclosed recording of their telephone calls with The Cosmopolitan (Id. at ¶¶11-13). Additionally, each proposed Class member shares a common legal issue with the others: whether Defendant's alleged recording of telephone calls violated the California Invasion of Privacy Act. Therefore, there are questions of law and fact common to all the proposed Class members. Third, Mirkarimi's claims of unconsented recording of telephone conversations with The Cosmopolitan are typical of the claims of the Class. Fourth, Mirkarimi has no interests antagonistic to those of the Class (Doc. 104-2, ¶16). Last, Class Counsel is familiar with the facts of this case, having been heavily involved in the litigation from its outset, and is experienced in representing class litigants in privacy

actions (Id. at ¶¶7, 8). The choice of counsel has traditionally been left to the parties, "whether they sue in their individual capacities or as class representatives." In re Cavanaugh, 306 F.3d 726, 734 (9th Cir. 2002). Therefore, the Court is preliminarily satisfied that Mirkamiri and Class Counsel will fairly and adequately protect the proposed Class's interests.

Next, Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to Class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The central issue common to all the proposed Class members is whether Defendant violated the California Invasion of Privacy Act by recording their telephone conversations without prior notice or consent, and if such calls gave rise to an objectively reasonable expectation of privacy. A common allegation underpinning that issue is that The Cosmopolitan maintained standardized procedures for recording customer calls, with no procedures for obtaining prior consent, before this lawsuit was filed and throughout the class period (Doc. 104-2, ¶11). Consequently, the Court is satisfied that the relationship between the common and individual issues are sufficiently cohesive in order to satisfy Rule 23(b)(3)'s predominance requirement. Lastly, judicial economy favors resolving this predominant issue once in a class action settlement. The Court therefore finds that a class action is superior to other available methods for the fair and efficient adjudication of this controversy and the alternative would entail thousands of individual, duplicative lawsuits.

While satisfying Fed. R. Civ. P. 23(a) and (b)(3), the proposed Class definition must also comply with 28 U.S.C. § 445, governing judicial recusal. Specifically, §§ 445(b)(4) and (5) require a judge to disqualify him or herself where he/she or his/her minor child or spouse, or a person within the third

degree of relation to either of them, or the spouse of such a person, is a party or known by the judge to have an interest that could be substantially affected by the outcome of that proceeding. The proposed class definition presently excludes "judicial officers to whom the Lawsuit is assigned and their court staff," but does not also exclude the judge's relations described in §§445(b)(4) and (5). Therefore, the Court GRANTS, with modification, conditional certification to the proposed Class and ORDERS the parties to amend the class definition in the Settlement Agreement to exclude the judicial officers' relations described in 28 U.S.C. §§ 445(b)(4) and (5).

### b. The Settlement

Rule 23(e) requires the Court "to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959. The Court must consider the following factors to determine whether a settlement meets the standard: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed, and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members to the proposed settlement." See id. Additionally, the settlement may not be the product of collusion among the negotiating parties. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). However, this is "by no means an exhaustive list of relevant considerations" and the significance of each factor depends on the nature of the claims, relief sought, and the facts of each individual case. Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).

5
ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT                                                12-CV-2160 BTM (DHB)

Because some of these factors cannot be fully assessed until the Court conducts the Final Approval Hearing, "a full fairness analysis is unnecessary at this stage." Campbell v. First Investors Corp., 2012 WL 5373423, at *4 (S.D. Cal. Oct. 29, 2012). "At the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible range of possible approval and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." Id.

Plaintiff's counsel asserts that the proposed settlement is fair, reasonable, and adequate, and is in the best interest of the parties in light of all known facts and circumstances, including the risks of delay, uncertainty of recovery, and the defenses asserted by Defendant (Doc. 104-2, ¶15). Specifically, Plaintiff recognizes that there is a possibility that the claim could fail to satisfy the elements of Cal. Pen. Code § 632(c) if the Court determines that the recorded telephone calls do not qualify as "confidential communications" under that statute. Additionally, even if Plaintiff prevails, the Class may have to defend any aggregated statutory damages award on constitutional grounds, further prolonging the litigation. Lastly, the Class may not obtain or maintain certification or, even with certification, may not be able to ultimately recover damages.

According to the Settlement Agreement, the parties have agreed to a Gross Settlement Amount of $14,500,000, plus interest (Doc. 104-3, Exh. 1, §IV.A). The timing and method of remittance has also been agreed upon (Id.). From the Gross Settlement Amount, subject to the Court's approval, payment will be made as follows: (1) service payment to the Class Representative not exceeding $30,000; (2) Class Counsel's attorney's fees of up to 30% of the Gross Settlement Amount; (3) actual litigation expenses not to exceed $150,000; (4) the Claims Administrator's fees and expenses; and (5) the cost

of direct and public notice (Doc. 104-3, Exh. 1, §IV.B). The settlement payments to Participating Class Members who submit timely and valid claims will be distributed on a pro-rata basis from the Net Settlement Amount arrived at after the five aforementioned court-approved fees are deducted from the Gross Settlement Amount, and subject to any applicable IRS tax withholdings (Doc. 104-3, Exh. 1, §VIII). If any funds remain undistributed, they will be distributed to two jointly proposed *cy pres* recipients to share equally and will be earmarked for the sole purpose of protecting California consumers' telecommunication privacy rights (Doc. 104-3, Exh. 1, §IV.B; Doc. 110). The prosed *cy pres* recipients are two tax-exempt organizations, San Francisco Consumer Action and Consumer Federation of California, which assert privacy claims on behalf of California consumers. At this preliminary stage, the Court approves the appointment of the two proposed *cy pres* recipients.

Plaintiff estimates that the total number of potential Class members is 150,000, and therefore arrives at an average individual award amount of $96.67 (Doc. 104-1, at 18). The Court finds this calculation to be incorrect because $96.67 is the quotient of the Gross Settlement Amount, not the Net Settlement Amount, divided by the estimated class size. Additionally, this figure does not take into consideration the administrative and notice expenses that the parties estimated at $300,000 during oral argument. Taking into account these deductions results in a Net Settlement Amount as low as $9,670,000, and a pro-rata award of $64.47.[1] This, however, assumes a 100% claim rate, which the parties believe to be improbable. At oral argument, Mr.

---

[1] The Court's values were calculated based on the following arithmetic: (1) $9,670,000 = $14,500,000—$4,350,000—$150,000—$30,000—$300,000; and (2) $64.47 = $9,670,000 / 150,000. The Court's calculation takes into account the Claims Administrator's fees and expenses and the cost of direct and public notice, which are estimated at $300,000.

Hannink estimated a claim rate of 10% to 13% of identifiable class members based on similar previous cases. At that claim rate, the parties anticipate a proportionately higher pro-rata award that may rise as high as $700 per verified claimant. Though this amount is significantly lower than the maximum amount an individual plaintiff may be awarded under Cal. Pen. Code § 637.2, which is the greater of three times the actual damages or $5,000, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998); see also Reed v. 1–800 Contacts, Inc., 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (citing California Invasion of Privacy Act cases approving settlements as low as $30 and $10 per class member); McDonald v. Bass Pro Outdoor World, LLC, 2014 WL 3867522, at *7 (S.D. Cal. Aug. 5, 2014) (preliminarily approving a $6,000,000 settlement of a California Invasion of Privacy Act case with 30,400 identifiable individuals and finding adequate a pro-rata award of approximately $132.57).

The Court has reviewed the monetary relief and the change of business practices that have been provided as part of the Settlement Agreement and recognizes their value to the Class. That value is also enhanced because settlement eliminates the risks related to certification, liability, and damages, including the possibility that the Class may not be able to make the necessary showings to obtain recovery. At this stage of the proceedings and based on the record, the Court preliminarily finds the settlement fair, reasonable and adequate and preliminarily approves the settlement amount.

In its entirety, it appears that the Settlement Agreement avoids substantial additional costs by all the parties, as well as the delay and risks that would be presented by further litigation. The Settlement Agreement has

been reached as a result of intensive, serious, arm's-length negotiations spanning almost three years. From the start of the litigation, the proposed Class has been represented by Dostart Clapp Hannink & Coveney, LLP, a law firm experienced in representing plaintiff classes in close to 50 certified class actions (Doc. 104-2, ¶¶6, 8). Additionally, there is no evidence of collusion between the parties. This settlement was overseen by an independent mediator and the agreement reached presumably reflects information obtained during the lengthy, contentious discovery process (Doc. 104-1, at 20; Doc. 104-2, ¶14). Thus, the Court finds that the Settlement Agreement is fair, adequate, and reasonable as to all potential Class members and GRANTS it preliminary approval.

### c. The Notices

A class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See <u>Mullane v. Cent. Hanover Bank & Trust Co</u>., 339 U.S. 306, 314 (1950). Additionally, the notice must comply with Fed. R. Civ. P. 23(c)(2)(B), requiring that the notice clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Having reviewed the proposed revised Notice of Class Action Settlement (Doc. 110-1, Exhibit 1), which identifies the two proposed *cy pres* recipients and the estimated pro-rata award for Participating Class Members,

9
ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT                           12-CV-2160 BTM (DHB)

been reached as a result of intensive, serious, arm's-length negotiations spanning almost three years. From the start of the litigation, the proposed Class has been represented by Dostart Clapp Hannink & Coveney, LLP, a law firm experienced in representing plaintiff classes in close to 50 certified class actions (Doc. 104-2, ¶¶6, 8). Additionally, there is no evidence of collusion between the parties. This settlement was overseen by an independent mediator and the agreement reached presumably reflects information obtained during the lengthy, contentious discovery process (Doc. 104-1, at 20; Doc. 104-2, ¶14). Thus, the Court finds that the Settlement Agreement is fair, adequate, and reasonable as to all potential Class members and GRANTS it preliminary approval.

### c. The Notices

A class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See <u>Mullane v. Cent. Hanover Bank & Trust Co</u>., 339 U.S. 306, 314 (1950). Additionally, the notice must comply with Fed. R. Civ. P. 23(c)(2)(B), requiring that the notice clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Having reviewed the proposed revised Notice of Class Action Settlement (Doc. 110-1, Exhibit 1), which identifies the two proposed *cy pres* recipients and the estimated pro-rata award for Participating Class Members,

the Court finds it adequate under the standard in <u>Mullane</u> and Rule 23(c)(2)(B). Additionally, the Court has reviewed and approves the Publication Notice (Doc. 104-3, Exhibit D), to be published three times in several California newspapers, which briefly describes the litigation, states the deadlines for filing a claim, opting out, or objecting to the settlement, and directs the recipient to the settlement website for further information, including accessing the relevant documents. Lastly, the Court approves the Blank and Green Claim Forms through which potential Class members may submit their claims for review and verification as set out in the Settlement Agreement (Doc. 104-3, Exhibits C and E). The Court finds that the method of notice, more fully set forth below, is reasonable.

Thus, the Court GRANTS approval of the Notices Forms.

## II.   CONCLUSION

Based upon the Court's review of the Settlement Agreement, the supporting briefs and declarations, and the entire record, Plaintiff's unopposed motion for preliminary approval of settlement (Doc. 104) and joint request for approval of proposed *cy pres* recipients and revised class notice (Doc. 110) are GRANTED with modification.

For the reasons stated above, it is hereby ORDERED:

1.   The Court GRANTS, with modification, conditional certification for settlement purposes to the Class defined in the Settlement Agreement (Doc. 104-3, Exh. 1, §III.A). The parties are to amend the Class definition to exclude the Lawsuit's judicial officers' relations under 28 U.S.C. §§ 445(b)(4) and (5).

2.   The Court appoints Mirkarimi as the Class Representative, Dostart Clapp Hannink & Coveney, LLP as Class Counsel, and CPT Group, Inc., as the Claims Administrator.

3. The Court preliminarily approves the Settlement Agreement, including the monetary relief, change of business practices, procedure for payment of Class Counsel's attorneys' fees and litigation expenses to the extent ultimately awarded by the Court, and procedure for payment of the Class Representative's service payment to the extent ultimately awarded by the Court.

4. The Court approves the revised Notice of Class Action Settlement submitted as Doc. 110-1, Exhibit. 1.

5. The Court preliminarily approves the appointment of the two jointly proposed *cy pres* recipients, San Francisco Consumer Action and Consumer Federation of California.

6. The Court approves the Publication Form (Doc. 104-3, Exh. D), Green Claim Form (Doc. 104-3, Exh. C), and Blank Claim Form (Doc. 104-3, Exh. E). The Court finds that the distribution of all four Notice Forms in the manner and form set forth in the Settlement Agreement, (Doc. 104-3, Exh. 1, §VII), and this Order, meets the requirements of Fed. R. Civ. P. 23, satisfies due process, and is the best notice practicable under the circumstances.

7. The Claims Administrator is directed to mail the applicable Notice Forms to the prospective Class no later than thirty (30) days after entry of this Order, and to take all steps necessary to establish a settlement website. The Claims Administrator is also directed to publish notice to the Class as provided in the Settlement Agreement.

8. Any objections to the Settlement Agreement or to any of its

/ / /
/ / /
/ / /
/ / /

11
ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT                     12-CV-2160 BTM (DHB)

provisions must be filed with this Court and served upon counsel no later than sixty (60) days following the mailing of the Notice of Class Action Settlement, or else such objection will be waived.

9.  As set forth in the Settlement Agreement, any Class member who wishes to opt-out of the Class shall mail, email, or deliver to the Claims Administrator a written request to opt-out no later than sixty (60) days following the mailing of the Notice of Class Action Settlement.  Individuals in the Class who do not timely request exclusion shall be bound by all determinations of the Court, the Settlement Agreement, and any judgment that may be entered thereon.

10.  If it has not already done so, Defendant shall promptly comply with the requirements of 28 U.S.C. § 1715.

11.  The parties shall file any motion for final approval, and Class Counsel shall file its motion for attorneys' fees, litigation expenses, and a service payment to Mirkarimi, on the dates required under the Local Rules and under controlling law.

12.  A final approval hearing shall be held in this Court on January 4, 2016 at 11:00 a.m., at which time the Court will determine whether the Settlement Agreement should be granted final approval. At that time, the Court will also consider Class Counsel's motion for attorneys' fees, litigation expenses, and a proposed service payment to Mirkarimi.

13.  Any Participating Class Member may appear at the Final Approval Hearing and object to the settlement ("Objectors"). Objectors may present evidence and file briefs or other papers that may be proper and relevant to the issues to be heard and determined by the Court. No Class member or any other person shall be heard or entitled to object, and no papers or briefs submitted by any such person shall be received or considered by the Court,

unless on or before the date that is sixty (60) days after the original date of mailing of the Class Notice, that person has filed the objections, papers and briefs with the Clerk of this Court and has served by hand or by first-class mail copies of such objections, papers and briefs upon Class Counsel (Dostart Clapp Hannink & Coveney, LLP, Attention James T. Hannink, 4370 La Jolla Village Drive, Suite 970, San Diego, CA 92122) and Defendant's counsel (Liner LLP, Attention David B. Farkas, 1100 Glendon Avenue, 14th Floor, Los Angeles, CA 90024). Any Participating Class Member who does not object in the manner provided for in this Order shall be deemed to have waived such objection and shall forever be foreclosed from objecting to the settlement.

14. If the settlement does not become effective in accordance with the terms of and as defined in the Settlement Agreement, or if the settlement is not finally approved by the Court, or is terminated, canceled or fails to become effective for any reason, this Order shall be rendered null and void and shall be vacated, and the parties shall revert to their respective positions as of before entering into the Settlement Agreement.  Accordingly, if the Settlement Agreement does not become effective for any reason: (i) the Settlement Agreement shall be null and void and shall have no further force and effect with respect to any party in this action; and (ii) all negotiations, proceedings, documents prepared, and statements made in connection therewith shall be without prejudice to any person or party hereto, shall not be deemed or construed to be an admission by any party of any act, matter, or proposition, provided, however, that the termination of the settlement shall not shield from subsequent discovery any factual information provided in connection with the negotiation of the Settlement Agreement that would ordinarily be discoverable but for the attempted settlement.

/ / /

15. The Court reserves the right to adjourn or continue the date of the Final Approval Hearing and all dates provided for in the Settlement Agreement without further notice to Class members, and retains jurisdiction to consider all further matters arising out of or connected with the proposed settlement.

16. In accordance with the terms of the Settlement Agreement, the Court hereby adopts the following dates for performance of the specified activities leading to the Final Approval Hearing:

| | |
|---|---|
| 15 days after preliminary approval | Deadline for Defendant to provide Claims Administrator and Class Counsel with the Customer Spreadsheet and the Telephone Number Spreadsheet. Also, the Parties shall provide the Claims Administrator with the Call Spreadsheet as promptly after preliminary approval as possible.<br><br>Deadline for Defendant to pay Three Hundred Thousand Dollars ($300,000) to the Claims Administrator by wire transfer. |
| 30 days after preliminary approval | Deadline for Claims Administrator to mail the Class Notice to all persons listed on the Customer Spreadsheet. This is the "Notice Date."<br><br>Deadline for Claims Administrator to establish a website on which it will make available the Class Notice, Claim Form, Settlement Agreement, Complaint, this Order Granting Preliminary Approval, and any other materials agreed to by the Parties.<br><br>The date subsequent to which the Claims Administrator will publish a series of three ads in the Los Angeles Times, the San Francisco Chronicle, the San Diego Union-Tribune, the Sacramento Bee, and the Fresno Bee. |

| 60 days after Notice Date | Claim/Exclusion/Objection Deadline; Last day for Class members to submit a request for exclusion or to file and serve any written objections to the Settlement Agreement and any notice of intent to appear at Final Approval Hearing. |
|---|---|
| 15 days after Claim/Exclusion/Objection Deadline | Claims Administrator will email to Class Counsel and Defendant's counsel a written report listing the name and contact information of each Participating Class Member, Excluded Class Member, and any person who has objected to the settlement, as well as the estimated settlement payment to each Participating Class Member. |
| January 4, 2016<br><br>120 days after preliminary approval | Final Approval Hearing |

17.   The parties are ORDERED to carry out the Settlement Agreement in the manner provided therein.

**IT IS SO ORDERED.**

Dated:  August 24, 2015

_____
Barry Ted Moskowitz, Chief Judge
United States District Court