1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK & COVENEY LLP
   4370 La Jolla Village Drive, Suite 970
4  San Diego, California 92122-1253
   Tel:  858-623-4200
5  Fax: 858-623-4299

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SASAN MIRKARIMI, individually and on behalf of all others similarly situated, | CASE NO. 12-CV-2160 BTM DHB |
| 12 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 13  Plaintiff, | |
| vs. | |
| 14 | Date:   January 4, 2016 |
| 15  NEVADA PROPERTY 1, LLC, a Delaware limited liability company DBA THE COSMOPOLITAN HOTEL | Time:   11:00 a.m. Ctrm.:  15B |
| 16  OF LAS VEGAS, and DOES 1-50, inclusive, | Judge:  Hon. Barry Ted Moskowitz |
| 17 | |
| 18  Defendant. | |

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................. 2

III.    SUMMARY OF CLAIMS ADMINISTRATION ............................................. 4

IV.    THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL ................ 6

    A.    The Strength of Plaintiff's Case ................................................. 8

    B.    The Risk, Expense, Complexity and Likely Duration of Litigation ................................................................................... 8

    C.    The Risk of Maintaining Class Action Status Throughout the Trial ....................................................................................... 9

    D.    The Amount Offered in Settlement .......................................... 10

    E.    Discovery Completed and the Stage of the Proceedings ......... 11

    F.    The Experience and Views of Counsel ..................................... 11

    G.    The Presence of a Governmental Participant ........................... 11

    H.    The Reaction of the Class to the Settlement ........................... 11

    I.    There Was No Collusion ........................................................... 12

V.    CONCLUSION ................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ades v. Omni Hotels Management Corp.*
   2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014) .................................... 9

*Churchill Village, L.L.C. v. General Electric*
   361 F.3d 566 (9th Cir. 2004) ............................................................ 12

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) ......................................................... 6, 7

*Forcellati v. Hyland's Inc.*
   2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ........................................ 6

*Garner v. State Farm Mutual Auto Insurance Co.*
   2010 U.S. Dist. LEXIS 49477 (N.D. Cal. April 22, 2011) ........................... 7, 8, 9

*Linney v. Cellular Alaska Partnership*
   151 F.3d 1234 (9th Cir. 1998) ......................................................... 7

*Marenco v. Visa*
   Case No. 10-cv-8022 (C.D. Cal.) ..................................................... 10

*McCabe v. Six Continents Hotels, Inc.*
   2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June 30, 2015) ................................. 10

*McDonald v. Bass Pro Outdoor World, LLC*
   Case No. 13-cv-889-BAS (DHB) (S.D. Cal. Dec. 18, 2014) ............................. 11

*National Rural Telecomm. Coop. v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................... 11

*NEI Contr. & Eng'g, Inc. v. Hanson Aggregates Pac. Southwest, Inc.*
   2015 U.S. Dist. LEXIS 37178 (S.D. Cal. Mar. 24, 2015) .................................... 9

*Officers for Justice v. Civil Service Comm'n*
   688 F.2d 615 (9th Cir. 1982) ......................................................... 6

*Quesada v. Bank of America Investment Svcs.*
   2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013) .................................... 9

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION          12-CV-2160 BTM DHB
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Reed v. 1-800 Contacts, Inc.*
   2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) ............................................ 11

*Rodriguez v. West Publishing Corp.*
   563 F.3d 948 (9th Cir. 2009) .................................................................................. 7

*Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*
   79 F.R.D. 571 (E.D. Pa. 1978) .............................................................................. 12

*Torres v. Nutrisystem, Inc.*
   2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013) ........................................ 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
   396 F.3d 96 (2nd Cir. 2005) .................................................................................... 7

*Young v. Hilton Worldwide, Inc.*
   2014 U.S. Dist. LEXIS 98268 (C.D. Cal. July 11, 2014),
   appeal docketed, 9th Cir. No. 14-56291 ................................................................ 8

**California Cases**

*Greenberg v. E-Trade Financial Corporation*
   Los Angeles County Superior Court, Case No. BC360152 .................................. 10

*Hataishi v. First American Home Buyers Protection Corp.*
   223 Cal. App. 4th 1454 (2014) ............................................................................... 9

*Kight v. CashCall, Inc.*
   231 Cal. App. 4th 112 (2014) ................................................................................. 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION       12-CV-2160 BTM DHB
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.     INTRODUCTION

On August 24, 2015, this Court preliminarily approved the instant $14.5 million settlement on behalf of a class of California consumers whose telephone calls were recorded without notification by defendant Nevada Property 1 LLC, d/b/a The Cosmopolitan of Las Vegas ("defendant" or "Cosmopolitan").  Plaintiff Sasan Mirkarimi ("plaintiff") now moves for final approval of the settlement.

Following dissemination of class notice, class members have had the opportunity to object to the settlement, opt out, or participate in the settlement by filing claims.  The response of class members demonstrates strong support for the settlement.  No objections have been filed, and only 14 class members opted out.  In contrast, over 13,000 class members have filed valid claims and will receive a substantial monetary payment if the settlement is approved.

The Claims Administrator has validated 13,259 claims to date, and is continuing to audit an additional 1,527 claims that were initially found deficient (which the claimants have an opportunity to correct).[1]  Thus, the final number of valid claims will be between 13,259 and 14,786.  Measured against the 99,556 individuals who received mailed notice, the final claims rate will be between 13.2% and 14.7%.  Assuming the Court awards attorneys' fees, expenses, and a class representative enhancement in the amounts that have been requested, each valid claimant will receive a payment between $703.64 (if all deficient claims are corrected) and $784.68 (if no deficient claims are corrected).  Based on all pertinent factors, this settlement merits final approval.

---

[1] Deficiencies can include such things as failing to sign the claim form, submitting information that does not match defendant's records, or otherwise failing to substantiate a claim.  The Claims Administrator has notified individuals who submitted deficient claims to give them an opportunity to cure the deficiency.  *See* Declaration of Abel Morales Regarding Class Notice and Claims Administration ("Morales Decl.") ¶ 10.  Plaintiff will provide the Court with updated numbers prior to the Final Approval Hearing.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION          12-CV-2160 BTM DHB
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## II.     FACTUAL BACKGROUND

Plaintiff commenced this lawsuit on July 12, 2012 by filing a complaint in the San Diego County Superior Court.  Doc. 1-1.  On August 31, 2012, defendant removed the action to this Court.  Doc. 1.

This case was vigorously contested from the outset.  On September 7, 2012, Defendant responded to the Complaint with a motion to transfer (Doc. 6) and a motion to dismiss (Doc. 7).   Plaintiff filed a First Amended Complaint on September 25, 2012.  Doc. 8.  On October 9, 2012, defendant re-filed its motion to dismiss.  Doc. 15.  After the motion to transfer was fully briefed, the motion was withdrawn.  Doc. 38.  On July 15, 2013, the Court entered an order denying the motion to dismiss as well as the alternative motion to strike class allegations. Doc. 40.  Defendant filed its Answer on August 2, 2013.  Doc. 41.

On October 24, 2013, the parties participated in an Early Neutral Evaluation Conference before Magistrate Judge David H. Bartick.  The case did not settle, so the parties thereafter conducted a Rule 26(f) conference and commenced formal discovery in November 2013.  Hannink Decl. ¶ 11.

Over the ensuing fifteen months, the parties engaged in extensive discovery. Plaintiff's written discovery included seven sets of requests for production (totaling 185 document requests); five sets of interrogatories (totaling 36 interrogatories); and two sets of requests for admissions (totaling 19 requests).  The written discovery gave rise to a number of disputes on which the parties met and conferred in accordance with Fed. R. Civ. P. 37 and Magistrate Judge Bartick's Chamber's Rules.  During the meet and confer efforts, defendant agreed to supplement many of its written responses and to produce many of the requested documents.  Altogether, defendant served a total of 28 sets of initial and supplemental responses to interrogatories, requests for production, and requests for admission, and produced Excel spreadsheets and other documents amounting to tens of thousands of pages. Hannink Decl. ¶ 13.

1    The parties' extensive meet and confer efforts resolved many discovery
2  issues.  However, the parties reached an impasse on several significant issues that
3  required judicial resolution.  On October 22, 2014, Magistrate Judge Bartick entered
4  an Order Regarding Joint Motion for Determination of Discovery Dispute, which
5  granted in part plaintiff's motion to compel further responses to key interrogatories
6  and requests for production.  Doc. 76.  On November 18, 2014, Magistrate Judge
7  Bartick entered an Order Regarding Plaintiff's *Ex Parte* Application for Discovery
8  Orders, which authorized additional written and deposition discovery on key issues.
9  Doc. 89.  On November 21, 2014, Magistrate Judge Bartick entered another Order
10 Resolving Joint Motion for Determination of Discovery Dispute, which granted
11 plaintiff's request to lift a temporary stay on communications with putative class
12 members.  Doc. 91.

13    Plaintiff also conducted substantial deposition discovery.  Plaintiff took eight
14 depositions, several of which gave rise to disputes requiring resolution by
15 Magistrate Judge Bartick.  Hannink Decl. ¶ 12.  Plaintiff obtained testimony from
16 individuals who had worked as defendant's Senior IT Product Manager, Director of
17 Compliance and Quality Assurance, Senior Director of Hotel Operations, Net
18 Security and Data Architect, Director of Resort Services, Director of IT Architecture
19 and Engineering, Senior Telecommunications Engineer, and one of several
20 corporate witnesses designated pursuant to Rule 30(b)(6).  Plaintiff also served Rule
21 45 subpoenas to obtain documents from several third parties, including CenturyLink
22 (defendant's telecommunications provider) and NICE Systems, Inc. (which supplied
23 and installed defendant's call recording system).  Hannink Decl. ¶ 12.

24    After extensive discovery, and as the class certification deadlines drew near,
25 the parties agreed to participate in mediation.  The mediation took place on February
26 20, 2015 in San Francisco, California, before mediator David A. Rotman.  The
27 mediation was successful, and thereafter the Settlement Agreement was signed on
28

3

1  May 8, 2015.   At all times, the settlement negotiations, while cordial, were
2  adversarial, non-collusive, and conducted at arm's-length.  Hannink Decl. ¶ 14.

3      On August 24, 2015, the Court preliminarily approved the settlement,
4  conditionally certified the Class for settlement purposes, and appointed plaintiff as
5  the class representative, Dostart Hannink & Coveney LLP as Class Counsel, and
6  CPT Group, Inc. as the Claims Administrator.  Doc. 111 at 10.

7  **III.    SUMMARY OF CLAIMS ADMINISTRATION**

8      The steps taken thus far to implement the settlement, and further steps that
9  will be taken upon final approval, are as follows:

10      1.    On August 28, 2015, defendant deposited $300,000 into an interest-
11  bearing account overseen by the Claims Administrator.  Morales Decl. ¶ 2.

12      2.    Following preliminary approval, the Claims Administrator was
13  provided with data files consisting of the Customer Spreadsheet, the Call
14  Spreadsheet, and the Telephone Number Spreadsheet.  Morales Decl. ¶ 3.

15      3.    Multiple forms of notice were provided to the class.   First, on
16  September 23, 2015, the Claims Administrator mailed the class notice and claim
17  form to the 100,541 individuals whose name and address information is listed in the
18  Customer Spreadsheet.   Prior to the mailing, the Claims Administrator ran the
19  addresses through the U.S. Postal Service's National Change of Address Database.
20  For any mailers that were returned as undeliverable, the Claims Administrator
21  performed a skip-trace.   Excluding undeliverables, 99,556 individuals received
22  mailed notice.  Morales Decl. ¶ 5.  Second, notice was published on three separate
23  occasions in the *Los Angeles Times*, the *San Francisco Chronicle*, the *San Diego*
24  *Union-Tribune*, the *Sacramento Bee*, and the *Fresno Bee*.  Morales Decl. ¶ 6 and Ex.
25  B.  Third, the Claims Administrator established a settlement website that went "live"
26  on September 23, 2015.   The settlement website includes information about the
27  lawsuit, contact information for the Claims Administrator and Class Counsel, and
28  links to pertinent documents.  Morales Decl. ¶ 7.

4

4.      The Claims Administrator also established a toll-free telephone number for this settlement, (888) 219-4645, which went live on September 23, 2015.  When calling the toll-free telephone number, callers were able to reach a live representative to provide information or answer questions.  Morales Decl. ¶ 8.

5.      The Claims Administrator also established procedures by which class members could submit claim forms via U.S. Mail, e-mail, or delivery to the Claims Administrator.  In addition, potential class members for whom name and address information was available through the Customer Spreadsheet (and who thus received a mailed notice) had the option of filing a claim form online through the settlement website by using a unique ID number and password provided on the mailed claim form.  Morales Decl. ¶ 9.

6.      On November 13, 2015, Class Counsel filed a motion requesting that the Court award $3,625,000 in attorneys' fees, $106,910.04 for litigation expenses, and $30,000 for a service payment to Mr. Mirkarimi, all payable from the common fund.  Doc. 115.  No objection or opposition has been filed by any class member.  Assuming these amounts are approved, and after payment of administration expenses of $334,000 (Morales Decl. ¶ 13), the net amount to be distributed to Participating Class Members will be $10,404,089.96.

7.      The deadline for filing claims, objecting to the settlement, or opting out was November 23, 2015.  Doc. 111.  The Claims Administrator received 14 requests for exclusion ("opt outs").  Morales Decl. ¶ 12 and Ex. C.  No objections have been filed with the Court or received by Class Counsel.  Hannink Decl. ¶ 16.

8.      The Claims Administrator has received a total of 15,003 claim forms, of which 217 were duplicates, leaving 14,786 claims to be analyzed.  Of that total, the Claims Administrator found that 13,259 are valid and that 1,527 have some deficiency (which may be corrected by the claimant).  Morales Decl. ¶ 10.  The Claims Administrator is continuing to audit those deficient claims and responses from the claimants.  Based on the 99,556 individuals who received mailed notice

5

(see paragraph 3, above), the valid claims rate is currently 13.2%, and could increase somewhat to the extent deficient claims are corrected.  This claims rate is higher than typical in consumer class actions.  *See Forcellati v. Hyland's Inc.*, 2014 U.S. Dist. LEXIS 50600, at *17 (C.D. Cal. Apr. 9, 2014) (noting the "prevailing rule of thumb" of a claims rate between three and five percent).

9.     Based on the absence of objections, the "Effective Date" of the settlement will be the date on which the Court enters a Judgment following final approval.  Doc. 104-3 (Agreement, Section II.A).

10.     Within ten days after the Effective Date, defendant will wire transfer to the Claims Administrator the remaining $14,200,000 of the Settlement Amount. Doc. 104-3 at 6 (Agreement, Section IV.A.).  As soon as practicable thereafter, the Claims Administrator will mail to each Participating Class Member a check representing that person's settlement payment (Doc. 104-3 at 13), and will also pay the attorneys' fees, litigation expenses, and service payment awarded by the Court (Doc. 104-3 at 6-7).

11.     If any settlement checks are uncashed after 120 days, the funds will be distributed to the Court-approved *cy pres* recipients.  Doc. 111 at 7 and Doc. 104-3 at 13-14 (Agreement, Section VIII.B.).

## IV.   THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL

The "universal standard" in evaluating the fairness of a settlement is whether the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  There is a strong judicial policy favoring settlements, particularly in complex class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  As the Ninth Circuit has recognized, "the very essence of a settlement is compromise." *Id.* at 624.  "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what

might have been achieved by the negotiators." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Garner v. State Farm Mutual Auto Insurance Co.*, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. April 22, 2011).

A settlement is presumed to be fair when: (1) it is reached through arms-length negotiations; (2) the class is represented by experienced counsel; and (3) the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005); *Garner* at *35 ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."). Here, all of the factors giving rise to a presumption of fairness exist. First, the Settlement was the product of arms-length, non-collusive negotiations, facilitated by a well-respected mediator. Hannink Decl. ¶ 14. Second, plaintiff is represented by experienced counsel. *Id.*, ¶¶ 2-7. Third, before reaching the settlement, the parties exchanged a significant amount of information and took extensive discovery. *Id.*, ¶¶ 8-13.

In evaluating the fairness of a settlement, the Court may consider some or all of the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *Garner*, 2010 U.S. Dist. LEXIS 49477 at *23. The Court should also satisfy itself that the settlement was not the product of collusion. *City of Seattle*, 955 F.2d at 1290; *Garner*, 2010 U.S. Dist. LEXIS 49477, at *35-36. These factors favor approval of the instant settlement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION                    12-CV-2160 BTM DHB
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    **A.     The Strength of Plaintiff's Case**

2         The first fairness factor addresses the likelihood of success on the merits and

3    the range of possible recovery.  *Garner*, 2010 U.S. Dist. LEXIS 49477, at *23-24.

4    Here, defendant asserted numerous defenses on the merits.  For example, defendant

5    has contended that telephone calls involving its contact center could not give rise to

6    an objectively reasonable expectation that the calls would not be recorded, in which

7    case the calls would not satisfy the "confidential communication" element for the

8    claim under Penal Code § 632.  Defendant also contended that in view of the

9    mobility of cell phones, plaintiff would not be able to prove that calls were made

10   while the class member was in California.  A related consideration is that the Ninth

11   Circuit will soon decide whether relief under § 632.7 is limited to individuals whose

12   calls are intercepted and recorded by someone who is not a participant in the call.

13   *See Young v. Hilton Worldwide, Inc.*, 2014 U.S. Dist. LEXIS 98268, at *3-4 (C.D.

14   Cal. July 11, 2014), appeal docketed, 9th Cir. No. 14-56291.  Absent approval of the

15   instant settlement, an adverse ruling in *Young* could jeopardize plaintiff's entire

16   claim based on § 632.7.  Moreover, apart from the merits, defendant contended that

17   even if plaintiff were to prevail, an award of aggregated statutory damages would

18   violate the Excessive Fines and Due Process provisions of the United States and

19   California Constitutions.

20        In weighing the likelihood of success factor, the Court should not attempt to

21   reach any conclusions about these issues, or any other contested issues in the case.

22   Rather, the Court may presume that, through negotiation, the parties, counsel, and

23   the mediator arrived at a reasonable range of settlement in light of the likelihood of

24   recovery.  *Garner*, 2010 U.S. Dist. LEXIS 49477, at *24.

25   **B.     The Risk, Expense, Complexity and Likely Duration of Litigation**

26        One of the benefits of a class settlement is that it provides class members with

27   prompt relief.  *Garner*, 2010 U.S. Dist. LEXIS 49477, at *28.  "Settlement avoids

28   the complexity, delay, risk and expense of continuing with the litigation and will

8

1    produce a prompt, certain, and substantial recovery for the Plaintiff class." *Id.,*

2    *quoting Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 U.S. Dist. LEXIS 85028,

3    at *13 (N.D. Cal. Oct. 22, 2008).

4        **C.    The Risk of Maintaining Class Action Status Throughout the Trial**

5        Defendant raised several arguments it intended to make if the action were to

6    proceed to a contested class certification motion.  Among other things, defendant

7    argued that individualized inquiries would predominate over common issues, and

8    that a class action would not be superior to individual litigation.

9        In the call-recording context, two federal district courts have denied motions

10   for class certification, and two panels of the California Court of Appeal have

11   affirmed trial court orders denying class certification.  *See Quesada v. Bank of*

12   *America Investment Svcs.*, 2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013);

13   *Torres v. Nutrisystem, Inc.*, 2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013);

14   *Hataishi v. First American Home Buyers Protection Corp.*, 223 Cal. App. 4th 1454

15   (2014); *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014).  On the other hand,

16   two federal courts have granted class certification in cases alleging violation of

17   Penal Code § 632.7 (not § 632).  *Ades v. Omni Hotels Management Corp.*, 2014

18   U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014); *NEI Contr. & Eng'g, Inc. v.*

19   *Hanson Aggregates Pac. Southwest, Inc.*, 2015 U.S. Dist. LEXIS 37178 (S.D. Cal.

20   Mar. 24, 2015).  There is no doubt that a motion for class certification would have

21   been hotly contested in this case.  There could be no certainty about whether a class

22   would be certified or, if so, how the class would be defined.

23       Apart from risks associated with class certification and trial, if the litigation

24   were to continue, the trial process itself and subsequent appeals would take years,

25   with very substantial expenditures of time and resources by the parties and the

26   Court, and without any guarantee of recovery for class members.  The proposed

27   settlement eliminates all litigation risks and ensures that the class members receive

28   some compensation for their claims on a timely basis.

### D.   The Amount Offered in Settlement

1

2   The $14,500,000 settlement in this case represents the second highest

3   recovery in any Privacy Act case.  The only higher recovery was the $18,000,000

4   settlement in *Marenco v. Visa*, Case No. 10-cv-8022 (C.D. Cal.), but it bears noting

5   that *Marenco* involved an estimated 600,000 class members (*see* Doc. 104-6 at 10),

6   whereas the class in the instant case is much smaller (which translates into a better

7   per-person recovery on a classwide basis).

8   Compared to the instant case, settlements in other Privacy Act cases typically

9   involve a materially lower recovery and/or a larger class size.  For example, in

10  *Skuro v. BMW of North America, LLC*, Case No. 10-cv-8672 GW (FFMx) (C.D.

11  Cal.), the settlement involved 40,000 class members and gave them the option of

12  selecting a six-month extension of the BMW Assist basic safety plan (valued at

13  $100) or making a claim for *up to* $50 against a $300,000 settlement fund.  *See* Doc.

14  104-5 at 11, 15.  In *Zaw v. Nelnet Business Solutions, Inc.*, Case No. 3:13-cv-05788-

15  RS (N.D. Cal.), the settlement of $1,188,110 was for a class size of approximately

16  104,100.  *See* Doc. 104-7 at 22.  In *McCabe v. Six Continents Hotels, Inc.*, 2015

17  U.S. Dist. LEXIS 85084, at *8 (N.D. Cal. June 30, 2015), the court preliminarily

18  approved an $11,700,000 settlement for a class size of 698,000.  In *Greenberg v. E-

19  Trade Financial Corporation*, Los Angeles County Superior Court, Case No.

20  BC360152, the $7,500,000 settlement was for a class that may have included as

21  many as 1,000,000 customers.  *See* Doc. 104-9 at 6, 16.

22  The instant settlement also represents an excellent result in terms of the net

23  individual recovery.  As of this filing, the Claims Administrator has validated

24  13,259 claims, and there are an additional 1,527 claims for which the auditing

25  process is still underway.  Based on these figures, and assuming the Court approves

26  the requested attorneys' fees, expenses, and class representative enhancement, each

27  valid claimant will receive between $784.68 (assuming no deficiencies are

28  corrected) and $703.64 (assuming all deficiencies are corrected).    Hannink

1   Decl. ¶ 17.  This is in line with the per-claim payments resulting from other Privacy

2   Act settlements for which courts in this district have granted final approval.  *See*

3   *Reed v. 1-800 Contacts, Inc.,* 2014 U.S. Dist. LEXIS 255, at *17 (S.D. Cal. Jan. 2,

4   2014) ($606.56 per valid claim); *McDonald v. Bass Pro Outdoor World, LLC*, Case

5   No. 13-cv-889-BAS (DHB) (S.D. Cal. Dec. 18, 2014) ($888.88 per valid claim).

6         **E.**    **Discovery Completed and the Stage of the Proceedings**

7         Discovery in this action was extensive.  The parties engaged in multiple

8   rounds of written discovery, numerous discovery conferences between counsel and

9   with the Court, several contested discovery motions, and defendant produced

10  thousands of pages of documents.  Plaintiff took eight depositions, and obtained

11  discovery from third parties pursuant to Rule 45 subpoenas.  Based on the discovery

12  completed, Class Counsel has sufficient information from which to evaluate

13  appropriate settlement terms.  Hannink Decl. ¶¶ 11-13.

14        **F.**    **The Experience and Views of Counsel**

15        Class Counsel has extensive experience in class action litigation.  Hannink

16  Decl. ¶ 7.  Class Counsel believes the settlement is fair, reasonable, and in the best

17  interests of the class members.  *Id.*, ¶ 9.

18        **G.**    **The Presence of a Governmental Participant**

19        No government entity is a party to this litigation.  Pursuant to 28 U.S.C.

20  § 1715, the U.S. Attorney General and the California Attorney General were

21  notified about the settlement on May 12, 2015 (the "CAFA notice").  Hannink Decl.

22  ¶ 15 and Exs. 1-2.  No government agency has responded to the CAFA notice and

23  the 90-day period prescribed by 28 U.S.C. §1715(d) has expired.  Hannink Decl. ¶

24  15.

25        **H.**    **The Reaction of the Class to the Settlement**

26        The "absence of a large number of objections to a proposed class action

27  settlement raises a strong presumption that the terms of a proposed class settlement

28  action are favorable to the class members."  *National Rural Telecomm. Coop. v.*

11

1  *DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) *citing In re Marine Midland*
2  *Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 420 (W.D.N.Y. 1994).

3        Here, the reaction of the class has been overwhelmingly positive.   No
4  objections were filed, and only 14 class members opted out.   Morales Decl. ¶¶ 11-
5  12.   That represents an opt-out rate of 0.014% of the potential class members to
6  whom notice was mailed.   By way of comparison, in *Sommers v. Abraham Lincoln*
7  *Fed. Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978), the district court found that
8  an opt-out rate of 4.25% (8,000 opt-outs out of 188,000 class members) was a factor
9  that *supported* approval of the settlement.   *See also Churchill Village, L.L.C. v.*
10 *General Electric*, 361 F.3d 566 (9th Cir. 2004) (Ninth Circuit upheld approval of a
11 settlement involving 90,000 class members, 500 opt-outs, and 45 objections).

12       **I.     There Was No Collusion**

13       This settlement was not the product of collusion.   To the contrary, the
14 settlement negotiations were at all times adversarial, non-collusive and conducted at
15 arms-length.   Hannink Decl. ¶ 14.

16 **V.    CONCLUSION**

17       Plaintiff respectfully submits that the settlement is fair, adequate, reasonable,
18 and in the best interest of the class members.   Plaintiff therefore requests that the
19 Court grant final approval and enter judgment in accordance with the settlement.

20

21 Dated: December 7, 2015              DOSTART HANNINK & COVENEY LLP

22

23                                      /s/ James T. Hannink
24                                      JAMES T. HANNINK
                                        Attorneys for Plaintiff
25 747163.5

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION          12-CV-2160 BTM DHB
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT